# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JO ANN SCOTT o/b/o
QUINTERO ASTHIAS SCOTT,

    Plaintiff,

v.                                      Case No. 8:17-cv-2307-AAS

NANCY A. BERRYHILL, Deputy
Commissioner of Operations,
Social Security Administration,

    Defendant.
_____/

## ORDER

Jo Ann Scott seeks judicial review of a decision by the Commissioner of Social Security (Commissioner) denying her deceased spouse Quintero Asthias Scott's claim for disability insurance benefits (DIB) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), administrative record, pleadings, and joint memorandum the parties submitted, the Commissioner's decision is **AFFIRMED**.

## I.     PROCEDURAL HISTORY

Mr. Scott applied for DIB for a disability he claimed began on January 1, 2008, later amended to August 18, 2011. (Tr. 19, 42, 152–53). Disability examiners denied Mr. Scott's application initially and after reconsideration. (Tr. 56–67, 69–81). Mr. Scott then requested a hearing before an ALJ, who found Mr. Scott not disabled. (Tr.

19–27, 98–99). Mr. Scott died before the ALJ issued his decision. (Doc. 575). The Commissioner then substituted Mrs. Scott in her husband's place. (Doc. 12)

The Appeals Council denied Mrs. Scott's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–3). Mrs. Scott now seeks review of the Commissioner's final decision. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Background

Mr. Scott was thirty-three years old when he submitted his DIB application and thirty-six years old when the ALJ held the hearing. (Tr. 37, 152). Mr. Scott had a high-school education. (Tr. 37). He had past relevant work as a customer-service representative and general office clerk. (Tr. 52). Mr. Scott claimed disability because of "a liver transplant chronic pain, fatigue, jundice [sic] depression lack of attention." (Tr. 56).

### B. Summary of the ALJ's Decision

The ALJ must follow five steps when evaluating a claim for disability.[1] 20 C.F.R. § 404.1520(a). First, if a claimant is engaged in substantial gainful activity,[2] he is not disabled. § 404.1520(b). Second, if a claimant does not have an impairment or combination of impairments that significantly limit his physical or mental ability to perform basic work activities, then he does not have a severe impairment and is

---

[1] If the ALJ determines that the claimant is under a disability at any step of the sequential analysis, the analysis ends. 20 C.F.R. § 404.1520(a)(4).

[2] Substantial gainful activity is paid work that requires significant physical or mental activity. § 404.1572.

not disabled. § 404.1520(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment included in the Listings, he is not disabled. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1. Fourth, if a claimant's impairments do not prevent him from performing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). At this fourth step, the ALJ determines the claimant's residual functional capacity ("RFC").[3] Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) do not prevent him from performing other work that exists in the national economy, then he is not disabled. § 404.1520(g).

The ALJ here determined Mr. Scott engaged in no substantial gainful activity "from his alleged onset date of August 18, 2011, through his date last insured of December 31, 2014." (Tr. 21) (citation omitted). The ALJ found Mr. Scott had severe impairments of "autoimmune hepatitis with cirrhosis and sclerosing cholangitis." (*Id.*) (citation omitted). Nonetheless, the ALJ found Mr. Scott's impairments or combination of impairments failed to meet or medically equal the severity of an impairment included in the Listings. (Tr. 23).

The ALJ then found Mr. Scott had the RFC to perform sedentary work. (Tr. 24). But the ALJ found Mr. Scott limited in the following way:

> [T]he claimant can life and/or carry 10 pounds occasionally and less than 10 pounds frequently. The claimant can stand and/or walk 2 hours in an 8-hour workday and sit 6 hours in an 8-hour workday. The claimant's

---

[3] A claimant's RFC is the level of physical and mental work he can consistently perform despite his limitations. § 404.1545.

3

pushing and/or pulling is limited to the weights given for lifting and/or carrying. The claimant can occasionally climb, stoop, crouch and crawl, but can never climb ladders, ropes, or scaffolds. The claimant must avoid concentrated exposure to heat, humidity, vibration, fumes, odors, dusts, gases, and poor ventilation, as well as hazardous machinery and unprotected heights.

(Tr. 24). Based on these findings, the ALJ determined Mr. Scott could have performed his past relevant work through his last-insured date (December 31, 2014). (Tr. 27). The ALJ therefore found Mr. Scott not disabled from the alleged onset date through his last-insured date. (*Id.*).

### III. ANALYSIS

#### A. Standard of Review

Review of the ALJ's decision is limited to determining whether the ALJ applied correct legal standards and whether substantial evidence supports his findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole

record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote,* 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

B.  **Issues on Appeal**

Mrs. Scott argues the court should remand the ALJ's decision for six reasons. (Doc. 17). Mrs. Scott first argues the ALJ failed to properly weigh opinions from Mr. Scott's treating physicians. (*Id.* at 7–9). Second, Mrs. Scott argues the ALJ failed to properly consider medical evidence about Mr. Scott's claimed fibromyalgia. (*Id.* at 11–12). Third, Mrs. Scott argues substantial evidence does not support the ALJ's RFC determination. (*Id.* at 14–15). Fourth, Mrs. Scott argues the ALJ failed to develop a full and fair record. (*Id.* at 17–19). Fifth, Mrs. Scott argues the ALJ failed to apply the proper legal standard with respect to Mr. Scott's claimed fibromyalgia. (*Id.* at 21–24). Sixth, Mrs. Scott argues the ALJ erred when he considered Mr. Scott's statements about the severity of his impairments. (*Id.* at 24–30).

This order will address Mrs. Scott's contentions in turn.

1.  Treating Physicians' Opinions

Mrs. Scott argues the ALJ failed to weigh medical opinions from Clark & Daughtrey Medical Group (Mr. Scott's referred treating source), especially their findings about Mr. Scott's claimed fibromyalgia. (*Id.* at 7). Mrs. Scott also argues the ALJ failed to weight medical opinions from Mr. Scott's primary-care providers. (*Id.*

5

at 8). According to Mrs. Scott, the findings from Clark & Daughtrey and Mr. Scott's primary-care providers are critical to determining whether Mr. Scott's statements at the hearing were consistent with medical evidence. (Doc. 17, p. 8). Further, Mrs. Scott argues the ALJ's failure to weigh findings from Clark & Daughtery and Mr. Scott's primary-care providers resulted in the ALJ's wrong conclusion concerning Mr. Scott's claimed fibromyalgia. (*Id.*). Mrs. Scott therefore concludes the ALJ erred because he failed to particularly state how much weight he gave to "each item of impairment evidence." (*Id.* at 9).

The Commissioner argues the ALJ considered all medical evidence, including the opinions from Clark & Daughtery and Mr. Scott's primary-care providers. (*Id.* at 9–10). The Commissioner points out the ALJ expressly assigned greater weight to treatment notes Mrs. Scott claims the ALJ failed to consider. (*Id.* at 10). According to the Commissioner, the ALJ need not assign weight to every piece of medical evidence. (*Id.*). The ALJ therefore concludes the ALJ properly considered medical opinions from Mr. Scott's treating physicians. (*Id.* at 10–11).

In assessing medical evidence, the ALJ must specifically state the weight he gives to different medical opinions, and his reasons for doing so. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The ALJ must give a treating physician's opinion considerable or controlling weight, unless good cause for not doing so exists. *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985) (citation omitted).

Contrary to Mrs. Scott's contention, the ALJ expressly assigned weight to medical notes from Mr. Scott's treating physicians. The ALJ specifically stated:

6

> As for the opinion evidence, the undersigned has reviewed and considered all opinion evidence under the criteria set for in appropriate Social Security Regulations and Rulings, including, but not limited to, 20 C.F.R. 404.1527 and SSR 06-3p. Greater weight is given to the treatment notes, clinical finings, and diagnostic tests contained within the treating medical evidence of record. These records indicate that the claimant was examined on an ongoing basis by treating physicians familiar with his overall history and complaints. Although the treating physicians offered no express opinions, the medical records and the notations contained therein are consistent with the assessment that the claimant had the residual functional capacity for sedentary work as described above.

(Tr. 26). The ALJ therefore expressly assigned greater weight to medical notes from Mr. Scott's treating physicians. Mrs. Scott apparently argues the ALJ erred because he failed to state how much weight he gave to the treating physicians' notes about Mr. Scott's claimed fibromyalgia and liver difficulties. (Doc. 17, pp. 7–8). The ALJ, however, need not refer to every piece of evidence in his decision if the ALJ discusses enough evidence for the reviewing court to conclude the ALJ properly considered the claimant's whole medical condition. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). The ALJ's decision here shows he thoroughly considered all medical evidence before concluding Mr. Scott was not disabled during the relevant period.

Mrs. Scott cites medical evidence from Clark & Daughtery, in which Dr. Raul Tallo's assessment lists "myalgia and myositis" and notes Mr. Scott "has some features of fibromyalgia." (Tr. 467–68). The ALJ specifically cited those same records from Clark & Daughtery when the ALJ discussed Mr. Scott's diagnosed depression. (Tr. 22, 468). The ALJ's decision therefore shows the ALJ thoroughly considered medical notes from Clark & Daughtery.

7

Mrs. Scott also cites medical evidence from various providers that discuss Mr. Scott's liver difficulties. (Tr. 266, 403–52, 516, 536–39, 547–59). The ALJ, however, cited those same exhibits when discussing Mr. Scott's liver disease at step two of the five-step sequential analysis. (Tr. 21–22). The ALJ's decision therefore shows the ALJ thoroughly considered medical notes from Mr. Scott's treating sources about his liver difficulties.

The facts from the two most relevant cases Mrs. Scott cites to support her argument are inapplicable here. *See Gibson v. Heckler*, 779 F.2d 619 (11th Cir. 1986) (concluding ALJ erred when he failed to address evidence about claimant's alleged impairments); *Sharfarz v. Bowen*, 528 F.2d 278 (11th Cir. 1987) (concluding substantial evidence did not support ALJ's decision to reject treating physicians' opinions). The ALJ here analyzed and addressed evidence about Mr. Scott's claimed fibromyalgia and liver difficulties. (Tr. 21, 23, 25). The ALJ also assigned greater weight to medical notes from Mr. Scott's treating physicians. (Tr. 26). *Gibson* and *Sharfarz*, therefore, do not require remand here.

Even if the ALJ erred by not assigning weight to each piece of evidence Mrs. Scott now cites, that error is harmless. A harmless error occurs when the ALJ commits an error that has no bearing on his substantive decision. *See Ala. Hosp. Ass'n v. Beasley*, 702 F.2d 955, 958 (11th Cir. 1983) (discussing the harmless error rule as it applies to agency decisions). The ALJ here assigned greater weight to the evidence Mrs. Scott cites. (Tr. 26). If the ALJ specifically assigned greater weight to each piece of evidence Mrs. Scott now cites, that would have no bearing on the ALJ's

8

substantive decision, which found Mr. Scott not disabled during the relevant period. The ALJ, therefore, committed no error when he evaluated medical opinions and notes from Mr. Scott's treating physicians.

2. Evidence about Fibromyalgia

Mrs. Scott argues the ALJ erred because he rejected opinions from treating physicians about Mr. Scott's claimed fibromyalgia. (Doc. 17, pp. 11–12). According to Mrs. Scott, the ALJ applied "an incorrect standard of law" when he concluded Mr. Scott was not disabled during the relevant period despite the treating physicians' evidence about fibromyalgia. (*Id.*).

The Commissioner argues the ALJ properly considered medical evidence about Mr. Scott's claimed fibromyalgia. (*Id.* at 12–14). The Commissioner also argues no physician diagnosed Mr. Scott with fibromyalgia but only noted Mr. Scott showed features of fibromyalgia. (*Id.* at 13). The Commissioner contends even if a physician diagnosed Mr. Scott with fibromyalgia, a diagnosis alone is not enough to establish a severe impairment at step two of the five-step sequential analysis. (*Id.* at 14).

Section III(B)(1) of this order explains how the ALJ thoroughly considered medical notes about fibromyalgia from Mr. Scott's treating sources. Further, the ALJ expressly assigned greater weight to medical notes from Mr. Scott's treating sources. Mrs. Scott's argument that the ALJ erred because he rejected evidence from treating physicians about Mr. Scott's claimed fibromyalgia is therefore unsuccessful.

### 3. RFC Determination

Mrs. Scott argues the ALJ erred when he found Mr. Scott had the RFC to perform sedentary work. (Doc. 17, pp. 14–15). Mrs. Scott claims Mr. Scott's past relevant work as an office clerk was actually medium work because Mr. Scott had to lift twenty-five to fifty pounds a day. (*Id.* at 15). Mrs. Scott therefore concludes the ALJ erred when he determined Mr. Scott could perform sedentary work. (*Id.*).

The Commissioner argues the ALJ properly considered relevant evidence when he determined Mr. Scott's RFC. (*Id.* at 15–17). According to the Commissioner, "general office clerk" is listed in the Dictionary of Occupational Titles (DOT) as a sedentary job—not medium work. (*Id.* at 17). The Commissioner also points out Mrs. Scott fails to contest the ALJ's conclusion that Mr. Scott could have worked as a customer-service representative. (*Id.*).

At step four of the sequential evaluation, the ALJ determines the claimant's RFC. 20 C.F.R. § 404.1520(e). A claimant's RFC is the most he can do in a work setting despite his impairments. § 404.1545; *Phillips*, 357 F.3d at 1238. The ALJ must determine the claimant's RFC using all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238. Substantial evidence must support the ALJ's RFC determination. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004); *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005).

Substantial evidence supports the ALJ's determination that Mr. Scott had the RFC to perform sedentary work from his alleged onset date (August 18, 2011) through his last-insured date (December 31, 2014). On April 10, 2014, Dr. James H. Johnson

noted Mr. Scott had "very abnormal liver enzymes," but Mr. Scott was stable over the last two years. (Tr. 529). A colonoscopy from December 9, 2014, revealed Mr. Scott had a normal colon. (Tr. 563). On July 14, 2015 (after Mr. Scott's last-insured date), Dr. Johnson noted that "[m]arkers for chronic liver disease have been negative except for an elevated IGG." (Tr. 517).

With respect to Mr. Scott's claimed fibromyalgia, on August 3, 2012, Dr. Saeed Ahmed performed an examination of Mr. Scott, which revealed Mr. Scott was in "no acute distress" and "well-developed." (Tr. 514). Dr. Ahmed's assessment included no diagnosis for fibromyalgia. (*Id.*). Dr. Ahmed also noted Mr. Scott no longer taking specific medications (Imuran, Actigall, and lansoprazole).

Dr. Lionel Henry, a state-agency consultant, concluded Mr. Scott could perform light work with various limitations. (Tr. 77–78). Drs. Jill Rowan and David Tessler, also state-agency consultants, concluded Mr. Scott's mental status was "within normal limits" and his daily activities were "mentally intact." (Tr. 62, 76).

These notes, and the other notes (favorable and unfavorable to Mr. Scott's disability claim) the ALJ discussed at step four of his decision, constitute substantial evidence to support the ALJ's determination that Mr. Scott had the RFC to perform sedentary work from his alleged onset date to his last-insured date.

Mrs. Scott's argument that the ALJ erred when he determined Mr. Scott could perform his past relevant work as an office clerk is further undermined by her own claim that Mr. Scott's past work as an office clerk was actually medium work. Medium work requires greater physical exertion than sedentary work. 20 C.F.R. §

404.1567. At the hearing before the ALJ, the vocational expert testified Mr. Scott's past work included "general office clerk" listed under 203.362-010 in the DOT. (Tr. 52). The "clerk-typist" position, listed under 203.362-010 in the DOT, is sedentary work. Clerk-Typist, Dictionary of Occupational Titles 203.362-010, 1991 WL 671685. If Mr. Scott's past work as an office clerk was actually performed at a medium-work level like Mrs. Scott argues, then—consistent with the ALJ's RFC determination—Mr. Scott could have performed work as an office clerk at the sedentary level. Mrs. Scott's argument is therefore unsuccessful.

4. <u>Full and Fair Record</u>

Mrs. Scott argues the ALJ failed to obtain additional medical evidence necessary to decide Mr. Scott's disability claim. (Doc. 17, pp. 17–19). According to Mrs. Scott, nurse Jennifer Pierson's note, in which she opined Mr. Scott was severely disabled, should have alerted the ALJ to obtain additional information from Ms. Pierson. (*Id.* at 18–19). Mrs. Scott argues Ms. Pierson note discusses Mr. Scott's ability to work and was therefore material to the ALJ's decision. (*Id.* at 19). Therefore, Mrs. Scott concludes this case should be remanded for the Commissioner to obtain additional information from Ms. Pierson. (*Id.*).

The Commissioner argues the ALJ was not required to obtain additional information from Ms. Pierson. (*Id.* at 19–21). According to the Commissioner, Mrs. Scott fails to explain how the record has evidentiary gaps, which resulted in prejudice and prevented the ALJ from issuing an informed decision. (*Id.* at 20). The

Commissioner also points out Ms. Pierson's noted is dated almost two years after Mr. Scott's last-insured date. (Doc. 17, p. 20).

The ALJ has a duty to develop a full and fair record. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (citation omitted). Remand for further development of the record is appropriate when the record contains evidentiary gaps, which result in unfairness or clear prejudice. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation and citation omitted). That said, the ALJ need not obtain additional medical evidence if the record already contains enough evidence for the ALJ to issue a decision. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th 1999); see also 20 C.F.R. § 404.1520b(b)(2) (stating the Commissioner may request claimant to undergo additional medical examinations if the record is insufficient).

An individual who applies for DIB and becomes disabled after his Social Security coverage lapses (i.e., after his last-insured date) is not entitled to benefits. Carolyn A. Kubitschek & Jon C. Dubin, *Social Security Disability: Law and Procedure in Federal Court* § 2:17 (2017).

Mr. Scott's alleged onset date was August 18, 2011. (Tr. 19). The ALJ determined Mr. Scott's last-insured date was December 31, 2014. (Tr. 21). Therefore, the ALJ had a duty to develop a full and fair record to determine whether Mr. Scott was disabled between August 18, 2011, and December 31, 2014.

Remand for further development of the record is unnecessary here because the record contained enough evidence for the ALJ to issue a decision. The record contains over 250 pages of medical records, dated from August 2012 through December 2014.

13

At the hearing before the ALJ, Mr. Scott's representative stated no other medical records existed for the ALJ to consider. (Tr. 37). And no evidentiary gaps, like extended time periods without medical notes, exist in the record.

Mrs. Scott instead argues Ms. Pierson's note, dated almost two years after Mr. Scott's last-insured date, requires remand for further development. In 2016, Ms. Pierson stated Mr. Scott was "considered severely disabled at this time." (Tr. 574). Ms. Pierson's statement that Mr. Scott was disabled two years after Mr. Scott's last-insured dates requires no remand. Mrs. Scott points to no other evidentiary gaps in the record. The ALJ, therefore, had enough evidence to issue a decision.

5.  Legal Standard with Respect to Mr. Scott's Fibromyalgia

Mrs. Scott argues the ALJ failed to develop a full and fair record "as the proper legal standards in fibromyalgia cases were not applied." (Doc. 17, pp. 21–24). According to Mrs. Scott, the ALJ failed to inquire into the effects of Mr. Scott's claimed fibromyalgia despite Mr. Scott's noted complaints about the symptoms. (*Id.* at 21). Mrs. Scott cites medical evidence from Drs. Tallo and Pedro Ruiz,[4] in which the doctors note Mr. Scott's tired appearance and insomnia complaints. (*Id.*). Mrs. Scott argues the ALJ failed to follow the legal standard for evaluating fibromyalgia under Social Security Ruling 12-2p. (*Id.*). Mrs. Scott claims the medical evidence satisfies the tests for establishing fibromyalgia under the 1990 ACR Criteria for the Classification of Fibromyalgia and the 2010 ACR Preliminary Diagnostic Criteria.

---

[4] Mrs. Scott claims Dr. Ruiz noted Mr. Scott's tired appearance, but nurse Mary Landsberger apparently authored the note Mrs. Scott cites. (Tr. 567).

(Doc. 17, pp. 21–24). Mrs. Scott concludes reversal is required because the ALJ applied an incorrect standard to Mr. Scott's claimed fibromyalgia. (*Id.* at 24).

The Commissioner argues the ALJ's decision shows the ALJ properly considered Mr. Scott's claimed fibromyalgia. (*Id.* at 24). According to the Commissioner, the medical evidence shows no consistent fibromyalgia diagnoses. (*Id.*). The Commissioner argues the evidence Mrs. Scott cites for support include no fibromyalgia diagnosis. (*Id.*). The Commissioner therefore concludes the ALJ properly considered Mr. Scott's fibromyalgia. (*Id.*).

Objective evidence of fibromyalgia is often absent from disability claims because fibromyalgia is generally diagnosed based on an individual's described symptoms. *Moore*, 405 F.3d at 1211 (citation omitted). The Commissioner therefore adopted criteria to help determine whether a claimant's fibromyalgia constitutes a severe medical impairment. SSR 12-2p, 2012 WL 3104869 (July 25, 2002).[5] The Commissioner will find a claimant's fibromyalgia constitutes a severe medical impairment if (1) a physician diagnosed fibromyalgia and (2) the claimant provides evidence satisfying the 1990 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria. SSR 12-2p, 2012 WL 3104867, at *2.

---

[5] Social Security Rulings are binding on the Social Security Administration and given "great respect and deference where the statute is not clear, and the legislative history offers no guidance." *Sullivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990) (citations omitted); *B.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. Unit B 1981) (citation omitted); *see also Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1361 (11th Cir. 2018) (citing *B.B. v. Schweiker*) (footnote omitted).

The ALJ committed no error when he concluded Mr. Scott's claimed fibromyalgia was not a severe impairment. None of the evidence Mrs. Scott cites includes a fibromyalgia diagnosis. (Tr. 265–76, 290, 292, 298–99, 360, 364–65, 407, 417, 421, 425, 429–30, 432, 436, 439, 447–48, 459, 465–67, 515, 532, 542, 563, 567, 570). The closest assessment comes from Dr. Tallo, who diagnosed Mr. Scott with "myalgia and myositis." (Tr. 468). In that same assessment, Dr. Tallo noted Mr. Scott "has some features of fibromyalgia." (*Id.*). Dr. Tallo, however, only diagnosed myalgia—not fibromyalgia. (*Id.*). A myalgia diagnosis is not the same as a fibromyalgia diagnosis. *See Cason v. Comm'r of Soc. Sec.*, No. 2:16-CV-170-FtM-MRM, 2017 WL 604015, at *5 (M.D. Fla. Feb. 15, 2017) (distinguishing between fibromyalgia diagnosis and myalgia diagnosis); *see also Cooley v. Colvin*, No. 2:14-CV-00264-LSC, 2015 WL 554877, at *6 (N.D. Ala. Feb. 11, 2015) (same).

The ALJ correctly determined Mr. Scott's claimed fibromyalgia was not a severe impairment because no physician diagnosed Mr. Scott with fibromyalgia. The ALJ therefore applied the correct standard.

6. Mr. Scott's Statements

Mrs. Scott argues the ALJ failed to follow the correct standard for determining whether Mr. Scott's subjective statements about the severity of his impairments were consistent with the medical evidence. (Doc. 17, pp. 24–30). Mrs. Scott argues Mr. Scott's multiple abdominal procedures and colonoscopies support Mr. Scott's statements about the severity of his impairments. (*Id.* at 25). Mrs. Scott points to Dr. Ahmed's medical record, in which he noted Mr. Scott's abdominal pain could have

16

been the result of adhesions and his multiple surgeries. (Doc. 17, p. 25). According to Mrs. Scott, Mr. Scott established disability based on his testimony because he provided medical evidence of his chronic liver disease. (*Id.* at 27). Further, Mrs. Scott argues Mr. Scott provided objective medical evidence confirming the severity of his chronic liver disease. (*Id.* at 28–30). Therefore, Mrs. Scott concludes the ALJ erred when he determined Mr. Scott's statements about the severity of his impairments were not consistent with medical evidence. (*Id.* at 30).

The Commissioner argues the ALJ properly considered Mr. Scott's statements about the severity of his impairments. (*Id.* at 30–32). According to the Commissioner, medical evidence supports the ALJ's evaluation of Mr. Scott's statements and the ALJ's determination that Mr. Scott could perform sedentary work. (*Id.* at 31). The Commissioner argues medical evidence revealed no findings to support Mr. Scott's statements about the severity of his impairments. (*Id.*). The Commissioner claims the ALJ properly considered Mr. Scott's failure to follow his doctor's recommendations, including medication treatment. (*Id.* at 32).

To establish disability based on testimony about pain and other symptoms, the claimant must show the following: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citation omitted). If the ALJ rejects subjective testimony, he must provide adequate reasons for doing so. *Id.* The ALJ may reject testimony about subjective

17

complaints, but that rejection must be based on substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

An ALJ may consider daily activities at step four of the sequential analysis. *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); *see also* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (stating the ALJ must base the RFC assessment on reports of daily activities, among other things). Failure to follow prescribed medical treatment without good reason also weighs in favor of finding a claimant not disabled. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citation omitted).

Substantial evidence supports the ALJ's determination that Mr. Scott's statements about the severity of his symptoms were not entirely consistent with medical evidence. Mr. Scott provided evidence of an underlying medical condition, namely pain because of liver complications. (*See, e.g.*, Tr. 567) (assessing Mr. Scott with "cirrhosis of liver" and "chronic pain syndrome"). Mr. Scott also testified at his hearing that he spent his days mostly in bed and that he could not "do anything over two hours." (Tr. 46–47). However, substantial evidence supports the ALJ's conclusion that medical evidence did not support Mr. Scott's statements about the severity of his symptoms.

On August 27, 2017, Danielle Warren from Tampa General Hospital noted Mr. Scott's levels "weren't ready yet" for a liver transplant; that is, Mr. Scott was not a suitable candidate. (Tr. 265, 270). On April 10, 2014, Dr. Johnson noted Mr. Scott "has very abnormal liver enzymes but stable over the last two years." (Tr. 529). On

December 17, 2014, Mr. Scott underwent an ultrasound of his abdomen, which was an "overall stable exam" according to Dr. Charley Myrick. (Tr. 545–46).

The medical record contains evidence suggesting Mr. Scott failed to comply with his medication treatment. For example, on August 3, 2012, Dr. Ahmed noted Mr. Scott was "not taking Imuran anymore and he ran out of Actigall and lansoprazole." (Tr. 436). On April 5, 2013, Dr. Ruiz noted Mr. Scott's reason for failing to comply with medication treatment "have been cost." (Tr. 426).

At the hearing before the ALJ, Mr. Scott testified he had friends, he helped his children with schoolwork, he went to church and his children's school, he cleaned around the house, and he went out with his wife. (Tr. 47, 49–50).

This and other evidence the ALJ thoroughly considered (favorable and unfavorable to Mr. Scott's disability) constitutes substantial evidence to support the ALJ's conclusion that Mr. Scott's statements about the severity of his pain were not entirely consistent with the record. The ALJ therefore committed no error when he considered Mr. Scott's statements about the severity of his impairments.

## IV. CONCLUSION

The ALJ assigned greater weight to opinions from Mr. Scott's treating sources. Substantial evidence supports the ALJ's determination that Mr. Scott had the RFC to perform sedentary work. Remand to obtain additional medical evidence is unnecessary because no evidentiary gaps exist in the record. The ALJ applied the correct standard with respect to Mr. Scott's claimed fibromyalgia. And substantial evidence supports the ALJ's determination that Mr. Scott's statements about the

severity of his impairments were not entirely consistent with medical evidence.

The Commissioner's decision is therefore **AFFIRMED**, and the case is **DISMISSED**. The Clerk of Court must enter final judgment for the Commissioner consistent with 42 U.S.C. Sections 405(g) and 1383(c)(3).

**ORDERED** in Tampa, Florida, on February 19, 2019.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge